# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**KENASIA GUILFORD,**

    Plaintiff,

    v.

**ATHENA CAREER ACADEMY**, *et al.*,

    Defendants.

Case No. 3:19 CV 2208

Judge Jack Zouhary

Magistrate Judge James R. Knepp II

**REPORT AND RECOMMENDATION**

## INTRODUCTION

On September 24, 2019, Plaintiff Kenasia Guilford ("Plaintiff") filed a complaint alleging three causes of action against multiple defendants (Doc. 1), all of whom have been terminated except remaining Defendants Athena Education Group, LTD ("Athena") and its Program Director Suzanne Smith ("Smith") (Docs. 8, 13). Against these remaining Defendants, Plaintiff brings claims for a violation of her procedural due process rights (Count I), a violation of her equal protection rights / race discrimination (Count II), and for unjust enrichment (Count III). *See* Doc. 1. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. This case has been referred to the undersigned for general pretrial supervision by the district court. (Doc. 15).

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 20), which Plaintiff opposed (Doc. 21), and to which Defendants replied (Doc. 22). For the reasons set forth herein, the undersigned recommends Defendants' motion (Doc. 20) be GRANTED in its entirety.

## BACKGROUND

Plaintiff is an African American individual who, at all relevant times, was enrolled as a student in the "LPN to RN" program at Athena. *See* Doc. 20, Ex. B, Smith Affidavit, at ¶¶10, 12

("Smith Aff."). Smith was the Program Director of Nursing Education. (Smith Aff., at ¶3). As an enrolled student, Plaintiff received a copy of Athena's 2019 Academic Handbook. *See* Doc. 20, Ex. 3 (receipt of the 2019 Handbook, signed by Plaintiff).

On February 28, 2019, Smith received an email from a faculty member in the LPN to RN program regarding Plaintiff's classroom behavior. (Smith Aff., at ¶4). Smith hosted a meeting with Plaintiff in her office the same morning. *Id*. at ¶¶4-5. An instructor told Plaintiff that Smith wanted to see her in her office following an exam; Plaintiff did not know what the meeting was about and had never spoken to Smith prior to this encounter. (Doc. 27, Guilford Affidavit, at ¶¶10-12) ("Guilford Aff."). During the meeting, Smith explained she received reports of Plaintiff's "disruptive or otherwise inappropriate classroom behavior" and that such behavior was in violation of the Academic Handbook. (Smith Aff., at ¶¶9-10). Smith believed Plaintiff did not respond after "several attempts to engage [her] in a conversation about her reported classroom behavior." *Id*. at ¶11. Plaintiff gave a verbal "no" answer when Smith asked if reports of disruptive behavior were accurate, however, Plaintiff was unaware that Smith was hearing impaired and Plaintiff is naturally soft spoken. (Guilford Aff., at ¶¶13, 15). Smith interpreted what she thought was Plaintiff's non-response as disrespectful and uncooperative. (Smith Aff., at ¶12). As a result, Smith decided to dismiss Plaintiff for the day to "(1) reconsider her unprofessional behavior and disrespectful attitude and (2) decide if she wanted to continue in the LPN to RN program." *Id*. As they exited the office, Smith asked Plaintiff which classroom she was in so she could retrieve her belongings. *Id*. at ¶¶12, 17. Plaintiff responded by telling Smith that she should know which classroom Plaintiff came from because she was the Program Director. *Id*. at ¶17; (Guilford Aff., at ¶25). In light of what she perceived to be Plaintiff's "unprofessional and disrespectful speech and conduct, as well as [] lack of cooperation" Smith "exercised her professional judgment" and dismissed Plaintiff

2

from the nursing program entirely. (Smith Aff., at ¶14). During this encounter, Plaintiff was not provided evidence of any complaints, nor anything in writing notifying her of a rule violation. (Guilford Aff., at ¶27).

Prior to this encounter, Plaintiff always received positive feedback on her academic performance and had never been disciplined. *Id*. at ¶¶7-8.

Plaintiff appealed her dismissal to the Academic Review Committee ("ARC"), pursuant to the terms of the Academic Handbook. (Smith Aff., at ¶18). The ARC upheld the dismissal and Plaintiff did not appeal further. *Id*.; *see also* Doc. 20, Ex. 1 (ARC Appeal Decision).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to

create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting that the court "need consider only the cited materials").

## DISCUSSION

In her Complaint, Plaintiff alleges three causes of action. (Doc. 1, at 7-8). In Count I, she alleges Defendants violated her right to procedural due process "by terminating her continuing educational program without giving [her] effective notice and opportunity to be heard." *Id*. at 7. In Count II, Plaintiff alleges Defendants discriminated against her and violated her right to equal protection by "treating her differently than other similarly situated students in the Program who were not African American." *Id*. Finally, in Count III, she brings a claim of unjust enrichment. *Id*. at 8. [1] Defendants moved for summary judgment alleging each of Plaintiff's claims fail as a matter of law. The undersigned addresses Defendants' arguments as to each claim.

*Count I – Procedural Due Process*

In Count I, Plaintiff alleges Defendants violated her procedural due process rights under the United States and Ohio Constitutions by intentionally "terminating her continuing educational program without giving [her] effective notice and opportunity to be heard." (Doc. 1, at 7). Defendants argue this claim fails as a matter of law because a Section 1983 violation can only be committed by someone acting under color of state law. (Doc. 20, at 2-3); *see also* Doc. 22, at 1-3. They argue that a private institution, such as Athena, is not a state actor under the law and the claim must therefore be dismissed. *Id*. Alternatively, Defendants argue that should the Court find

---

1. It is necessary for the Court to iron out a pleading wrinkle before proceeding. To the extent Plaintiff attempts to bring Section 1983 claims for violations of her rights under the Ohio Constitution or violations of state law, these claims fail because Section 1983 is only available for violations of the United States Constitution or other federal laws. *See, e.g.*, *Ohio ex rel. Faulkner v. City of Middletown*, 688 F. App'x 377, 380 (6th Cir. 2017).

state action, Plaintiff fails to satisfy the elements necessary to succeed on a Section 1983 procedural due process claim.

Under Section 1983, "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured". 42 U.S.C. § 1983. To survive summary judgment in a Section 1983 claim, a plaintiff must prove that some conduct by a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or other federal law. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).[2] Acting under color of state law means that the defendant must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

A private party may become a state actor only in limited circumstances. The Sixth Circuit looks to whether a private party satisfies one of three tests to determine whether the party has acted under color of state law for purposes of Section 1983. These are: (1) the "public function test"; (2) the "state compulsion test", and (3) the "nexus test". *Doe v. Case Western Reserve Univ.*, 2017 WL 3840418, at *8 (N.D. Ohio) (citing cases). The "public function test" finds state action where a private party "exercises powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Under the "state compulsion test", the state must "exercise such coercive power or provide such

---

2. A procedural due process claim based on the Ohio Constitution similarly requires a showing of governmental action. *See, e.g., State ex rel. Howard v. Ferreri*, 70 Ohio St. 3d 587, 591 (1994).

significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Id*. Finally, the "nexus test" requires a close relationship between the state and private actor usually by way of a state regulation or contract. *Id*.

Plaintiff does not respond to Defendants' argument that dismissal is warranted because they are not state actors. Moreover, Plaintiff does not argue, provide any proof, or cite to any case law to suggest Defendants may be held liable as state actors under any of the recognized tests – she needed to do so to survive summary judgment. *See generally* Doc. 21; *see also Faparusi v. Case Western Reserve Univ.*, 711 F. App'x 269, 275-76 (6th Cir. 2017) (upholding a district court finding plaintiff's due process claim failed as a matter of law because he failed to allege any facts establishing Case Western as a state actor); *Doe*, 2017 WL 3840418, at *8 ("Plaintiff must make a factual, non-conclusory allegation to demonstrate that CWRU, a private university, was acting as a state actor when it investigated Jane Doe's complaint and adjudicated the charges.").

Because Plaintiff's procedural due process violation claim fails at demonstrating the threshold requirement of state action, the undersigned cannot recommend the Court proceed further in analyzing the merits of the claim. For these reasons, the undersigned finds this claim fails as a matter of law and summary judgment should be granted to Defendants on Count I.

*Count II – Equal Protection*

In Count II, Plaintiff alleges Defendants violated her civil rights by "treating her differently than other similarly situated students in the Program who were not African American." (Doc. 1, at 7-8). Defendants assume the existence of a contract between Plaintiff and Athena and therefore assume she meant to plead Count II as a violation of 42 U.S.C. Section 1981 which addresses, *inter alia*, the equal right of all persons to make and enter into contracts. (Doc. 20, at 12). Through

this lens, they contend Plaintiff cannot satisfy the elements necessary to establish a *prima facie* case of race discrimination. *Id*. at 12-13.

To establish a *prima facie* case of race discrimination under Section 1981, Plaintiff must prove that "(1) she is a member of a protected class; (2) she suffered an adverse action at the hands of the defendants in her pursuit of her education; (3) she was qualified to continue in her pursuit of her education; and (4) she was treated differently from similarly situated students who are not members of the protected class." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citing *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973)).[3]  As an African American individual who was expelled from an education program, it is undisputed Plaintiff satisfies the first two elements. Defendants also do not dispute the third element – that, absent this disciplinary incident, Plaintiff was qualified to continue in the program. Defendants do, however, challenge Plaintiff's ability to satisfy the fourth element. They contend Plaintiff is unable to show a causal link between her race and her dismissal from the program. (Doc. 20, at 13-14). Specifically, Defendants point to Plaintiff's deposition where she claimed the root of her discrimination claim was that a

---

3. The precise legal basis for Plaintiff's racial discrimination claim is not entirely clear from her complaint. *See* Doc. 1, at 7 ("Defendants' disparate treatment of plaintiff harmed Plaintiff . . . in violation of her civil rights and other federal and state proscriptions against discrimination by race[.]"). Defendants interpret the claim as brought under Section 1981 (Doc. 20, at 12 n.3), and Plaintiff does not dispute this characterization in her opposition brief (Doc. 21, at 11-12). Moreover, the undersigned notes that the analysis of a racial discrimination claim is the same regardless of whether it is brought under Title VII, 42 U.S.C. § 2000e-2(a)(1), 42 U.S.C. § 1981, Ohio Rev. Code § 4112.02 or the Equal Protection Clause under 42 U.S.C. § 1983. *See Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 510 (6th Cir. 2016) ("[F]ederal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of [Ohio Rev. Code] Chapter 4112.") (internal quotation omitted); *Thomas v City of Lansing*, 410 F. App'x 922, 934 (6th Cir. 2011) (court "review[s] claims of alleged race discrimination brought under § 1981 . . . under the same standards as claims for race discrimination brought under Title VII" and "the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983.") (internal quotation omitted).

Caucasian student who talked excessively in class got "a little bit nicer of a write-up" on a mid-term review. *Id*. at 13 (citing Doc. 20, Ex. D, Guilford Depo.). In her opposition to summary judgment, Plaintiff concedes that "Defendants' representation about [her] testimony regarding her racial discrimination claim is accurate." (Doc. 21, at 11). She elaborates, stating that she and another student who shared her workspace were the "culprits of the offending behavior", but only she was sent to Smith's office while the Caucasian student was not. *Id*. Notably, Plaintiff does not submit any evidence to show the content of her own mid-term review, nor that any Caucasian student received "a little bit nicer" of the same. Further, Smith averred she had not seen Plaintiff's mid-term prior to the meeting. (Smith Aff., at ¶22).

In support of her claim, Plaintiff relies on written statements from two classmates. (Doc. 21, at 11-12) (citing Doc. 30). In these statements, each recounts that Plaintiff and an unidentified tablemate, part of a "particular group of young ladies", were highly disruptive during class and even bullied and harassed one of the authors, giving specific examples. *See generally* Doc. 30. However, these statements fail to: (1) identify the race of Plaintiff's tablemate, or any of the "particular group of young ladies"; or (2) show that Plaintiff was disciplined for talking while the other (presumably Caucasian) offenders were not, *i.e.* that they were treated better (or differently) than Plaintiff. *Id*. Plaintiff needed to establish such facts, and these statements do not do that.

Moreover, Defendants argue Plaintiff's dismissal was solely the result of her conduct during her meeting with Smith – not due to her classroom behavior. (Doc. 20, at 13). Here, Plaintiff has failed to provide any evidence to demonstrate that her tablemate or other, equally disruptive, Caucasian classmates were given preferential treatment by: (1) not being called to Smith's office for their disruptive behavior or, more importantly, (2) not being dismissed after Smith perceived them to be disrespectful during a meeting therein.

8

Without evidence to prove the fourth element, Plaintiff cannot establish a *prima facie* case of racial discrimination. *Bell*, 351 F.3d at 253. Because Plaintiff cannot show that the adverse action taken by Athena was because of her race, the undersigned finds this claim fails as a matter of law and summary judgment should be granted to Defendants on Count II.

*Count III – Unjust Enrichment*

In Count III, Plaintiff brings a claim for unjust enrichment under Ohio law for tuition paid to Athena which was not refunded following her dismissal. (Doc. 1, at 8). Defendants argue Plaintiff's unjust enrichment claim fails as a matter of law because the relationship between them is governed by a contract. (Doc. 20, at 14-15).

To recover for unjust enrichment in Ohio, Plaintiff must prove (1) she conferred a benefit upon Defendants, (2) Defendants had knowledge of such benefit, and (3) Defendants retained the benefit under circumstances where it would be unjust for them to do so without payment. *Cuspide Props., Ltd. v. Earl Mech. Servs*., 53 N.E.3d 818, 833 (Ohio Ct. App. 2015) (citing *Hambleton v. R.G. Barry Corp*., 465 N.E.2d 1298, 1302 (Ohio 1984)). However, "[u]nder Ohio law, a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013) (citing *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009)). Where the existence of a contract is in dispute, an unjust enrichment claim may be pled instead of a breach of contract claim. *Id.*

As Defendants point out, "the relationship between a student and a university is contractual in nature." *Spafford v. Cuyahoga Cmty. Coll.*, 2005 WL 797936, at *4 (Ohio Ct. App.) (citing *Behrend v. State*, 379 N.E.2d 617, 620 (Ohio Ct. App. 1977)). "The terms of the contract are found in the university's handbooks, catalogs, policies, and brochures supplied to the students."

*Cleveland State Univ. v. Simpson*, 137 N.E.3d 739, 743 (Ohio Ct. App. 2019) (citing *Leiby v. Univ. of Akron*, 2006 WL 1530152, at *4 (Ohio Ct. App.)).

Here, Defendants are correct that the relationship between Plaintiff and Athena is contractual in nature. *Behrend*, 379 N.E.2d at 620. Because Plaintiff does not dispute the existence of a contract there is no factual dispute and Plaintiff's unjust enrichment claim fails as a matter of law. *Bihn*, 980 F. Supp. 2d at 904.

For these reasons, the undersigned finds this claim fails as a matter of law and summary judgment should be granted to Defendants on Count III.

CONCLUSION

For the reasons contained herein, the undersigned recommends the Court GRANT Defendants' Motion for Summary Judgment (Doc. 20) in its entirety.


  s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).