IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kenasia Guilford,            Case No. 3:19 CV 2208

        Plaintiff,          SUMMARY JUDGMENT ORDER

-vs-          JUDGE JACK ZOUHARY

Athena Education Group, LTD, et al.,

        Defendants.

## INTRODUCTION

No one likes being called to the principal's office -- an anxious and uneasy feeling some remember from childhood.  In February 2019, Plaintiff Kenasia Guilford, a nursing student, was asked to report to the office of her program director.  Within minutes, Guilford would be dismissed from school.  This suit followed.

## BACKGROUND

Guilford was enrolled as a student in the "LPN to RN" program at Athena Career Academy ("Athena") (Doc. 1 at ¶¶ 13–15).  Defendant Suzanne Smith was the Program Director of Nursing Education at Athena (*id.* at ¶ 7).  Guilford is black; Smith is white (Doc. 1 at ¶ 35).  In February 2019, a male faculty member approached Smith about Guilford's classroom behavior (Doc. 31 at 109–10). He indicated other students were complaining that Guilford was "disrupting the classroom" (*id.* at 111).  Smith set a meeting with Guilford that same morning (*id.* at 109–10).

Smith, who is hearing impaired, asserts Guilford just "glare[d]" and "smirk[ed]" upon arriving in her office, yet refused to talk (*id.* at 6, 120).  According to Guilford, she is "naturally soft spoken"

and was unaware Smith had a hearing impairment (Doc. 27 at 2). Guilford asserts that Smith "rudely" commented on her facial expressions, asking if she wanted to continue in the program (*id.*). Guilford replied: "[I] paid to be in the program" (*id.*). Smith then dismissed Guilford "for the day," and began to escort her to retrieve her belongings (Doc. 31 at 123). On the way out of her office, Smith admonished Guilford: "you're [going to] learn to be respectful" (*id.* at 3). When Smith asked Guilford which classroom was hers, Guilford snapped: "[T]he front one, you're the dean, you should know which class I attend" (Doc. 27 at 3). Smith then dismissed Guilford: "[T]hat's it! You're done with my program!" (*id.*). Smith claims Guilford swore at her and acted in a threatening manner by "invad[ing]" her personal space in the hallway (Doc. 31 at 124–25); Guilford denies these allegations (Doc. 20 at 158).

After her dismissal, Guilford filed this suit, asserting: (1) a due-process violation; (2) an equal-protection violation, and (3) unjust enrichment (Doc. 1 at ¶¶ 29–46). Defendants move for Summary Judgment, which has been fully briefed (Docs. 20–22). Magistrate Judge James Knepp filed a Report and Recommendation ("R&R"), recommending this Court dismiss each of Guilford's claims (Doc. 32). Guilford now objects (Doc. 33); Defendants reply (Doc. 34).

## DISCUSSION

### *Procedural Due Process*

With respect to Guilford's due-process claim, Magistrate Judge Knepp determined that Athena was not a state actor: "[Guilford] does not argue, provide any proof, or cite to any case law to suggest Defendants may be held liable as state actors under any of the recognized tests -- she needed to do so to survive summary judgment" (Doc. 32 at 6) (citing *Faparusi v. Case Western Reserve Univ.*, 711 F. App'x 269, 275–76 (6th Cir. 2017)). Guilford objects, arguing (Doc. 33 at 2):

2

> [T]he State of Ohio has delegated training authority it would otherwise retain to Defendants. Further, [Athena] teach[es] a curriculum provided by the [S]tate in an effort to obtain state licensure. [Athena] does not operate outside this capacity rendering its relationship with [the State] inextricable to its existence and operation, . . . [which] makes it a "state actor" within the meaning of § 1983.

A private party may become a state actor under the "nexus test" when there is a close relationship between the state and private actor, usually by way of a state regulation or contract. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Guilford's argument without legal authority, that Athena is a state actor, fails for two reasons.

First, the State of Ohio does not dictate Athena's disciplinary policies, nor was it involved in the actions taken by Smith. In *Blackburn v. Fisk University*, plaintiffs argued their constitutional rights were violated when they were suspended. 443 F.2d. 121, 122 (6th Cir. 1971). The Sixth Circuit found the private university was not a state actor because the "matters of alleged State involvement [were] in no way concerned with the actions taken by the school officials" and because the State "[did] not dictate the disciplinary policies of the school." *Id.* at 124. So too here. *See Doe v. Case W. Reserve Univ.*, 2017 WL 3840418, at *8 (N.D. Ohio 2017) ("The ultimate issue in determining whether a person or entity is subject to suit under § 1983 is the same as state action required under the Fourteenth Amendment, that is -- is the alleged infringement of federal rights fairly attributable to the State?") (citations and quotation marks omitted)).

Second, the use of certain curriculum to achieve state licensure is not sufficient to transform Athena into a state actor. If this were true, every private institution that prepares students for state-mandated professional exams would be subject to liability under Section 1983. For instance, in *Grafton v. Brooklyn Law School*, the Second Circuit found the private law school was not a state actor -- even though the school had to follow state regulations in order to retain its accreditation so graduates could pursue state licensure. 478 F.2d 1137, 1142–43 (2d Cir. 1973). Similarly, following

3

state regulations in order for its students to be eligible for a state-sanctioned nursing license is not a sufficient "nexus" to transform Athena into a state actor. Guilford's due-process claim fails.

### *Equal Protection*

Guilford next alleges that "Defendants violated [her] civil rights by treating her differently than other similarly situated students . . . who were not African American" (Doc. 1 at ¶ 35). As noted in the R&R, Guilford is vague as to the basis of her claim. However, in summary judgment briefing, Defendants characterize Guilford's claim as arising under 42 U.S.C. § 1981 (Doc. 20 at 12); a characterization Guilford does not dispute (Doc. 21 at 12–13). Under Section 1981, Guilford must prove that: "(1) she is a member of a protected class; (2) she suffered an adverse action at the hands of [D]efendants in her pursuit of her education; (3) she was qualified to continue in her pursuit of her education; and (4) she was treated differently from similarly situated students who are not members of the protected class." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citation omitted). Only the fourth element is in dispute (Doc. 32 at 7).

Guilford objects to the Magistrate Judge's conclusion that she failed to prove this element because she did not "(1) identify the race of [her] tablemate . . . or (2) show that [she] was disciplined for disrupting class, while the other (presumably [white]) offenders were not" (*id.* at 8). Guilford claims she did both of those things in her Opposition Brief, which reads (Doc. 21 at 11):

> Additionally, the student statements . . . named both [Guilford] and the student who shared her workspace as the culprits of the offending behavior but only [Guilford] was sent to [Smith]'s office. This [] decision to send [Guilford] and not her white counterpart is the genesis of her dismissal. It is the disparate treatment that [Guilford] referenced in her claim. Both students were accused by students and in their class feedback from the instructor of talking excessively in class. Yet, [Guilford] was the only one punished by being sent to [Smith]'s office

Guilford argues the disparate treatment she suffered was being singled out for the misconduct -- the only student sent to Smith's office. Yet, she fails to set forth any evidence of the misconduct or

4

expected discipline faced by others. More importantly, Guilford previously testified otherwise (Doc. 20 at 162–63):

> Q: In the complaint in Paragraph 25 there's an allegation that the defendant discriminated against you; how did they discriminate against you?
> A: The write up I felt was discriminatory.
>
> Q: What's the write up?
> A: The original mid-term review that I was given the day before this incident.
>
> \* \* \*
>
> Q: And what's the content of the write up?
> A: That my mid-term grades and my performance in class and that I was excessively talking.
>
> Q: Besides not liking the content, how did that discriminate against you?
> A: The way it was worded there was a big difference.
>
> Q: Explain that to me; what was the big difference?
> A: The person that I assume I was excessively talking to would be my neighbor in class, and hers was a little bit nicer of a write up.
>
> Q: Is your neighbor a female?
> A: Yes.
>
> Q: Is she an African American?
> A: No.
>
> Q: What race is she?
> A: She's Caucasian.
>
> \* \* \*
>
> Q: Is there any other basis for the allegation of you being discriminated against that's stated in Paragraph 25 of the complaint besides what we've talked about or is this what you're talking about when you say you were discriminated against?
> A: This is what I was talking about.

This explanation of her claim poses two distinct problems for Guilford.

First, she fails to introduce any evidence of what was in her white classmate's mid-term evaluation -- meaning she cannot demonstrate differential treatment based on the reports. Guilford points to statements from fellow classmates that she believes demonstrate that a white student should have been sent to Smith's office, but those statements reveal no such thing. Guilford's classmates state (Doc. 30):

- "There [have] been issues with a particular group of young ladies that sit in the back of the class, mainly [Guilford]."

- "[Guilford] is always making rude remarks. She is constantly saying remarks such as: 'These people are so dumb,' 'Oh my god, this is so easy,' 'I don't understand why they don't get it, [c]an we just move along?'"

Though these statements reference other students "being disruptive," they do not establish that any such behavior rose to the level of Guilford's, nor do they indicate the disciplinary action taken against those students. Further, the statements corroborate Smith's testimony that multiple students complained about Guilford's classroom behavior to their professor, who relayed those complaints to Smith (Doc. 31 at 120).

Second, the alleged discrimination is wholly unrelated to the adverse action taken against Guilford. Guilford was dismissed from the program for what took place *after* she arrived at Smith's office (Docs. 27 at 2–4; 31 at 123). Without the unfavorable mid-term evaluation, it is clear whatever took place in the classroom was not actually the genesis of her dismissal. It is undisputed that Smith asked Guilford (1) whether she wanted to remain in the program, and (2) to retrieve her belongings because she was done with the program "for the day" (Docs. 27 at 2; 31 at 123–126). Guilford points to the fact that Smith interviewed other students to investigate her alleged disruptive behavior after her dismissal (Doc. 33 at 3). However, this assertion supports Defendants' argument that Guilford's dismissal was based solely on her conduct during her meeting with Smith -- not her classroom behavior or mid-term evaluation (Doc. 20 at 13). Further, the race of any other students involved or

6

interviewed is unclear (Doc. 31 at 128–31). Outside of her own assertion in response to summary judgment, the level of involvement of any other students in the classroom disruption -- or the race of those students -- is nowhere to be found in the record.

### *Unjust Enrichment*

Finally, Guilford alleges Athena's retention of her tuition is unjust enrichment. The Magistrate Judge concluded this claim fails under Ohio law (Doc. 32 at 9). *See Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013); *Spafford v. Cuyahoga Cmty. Coll.*, 2005-Ohio-1672, ¶ 34 (Ohio Ct. App. 2005). Guilford does not disagree with this conclusion; neither does this Court.

### CONCLUSION

Guilford failed to produce evidence sufficient for a reasonable jury to find in her favor on any claim. The record evidence reflects that Guilford was the author of her own misfortune. This Court adopts the R&R (Doc. 32); Defendants' Motion (Doc. 20) is granted. Case dismissed.

IT IS SO ORDERED.

                                                 s/ *Jack Zouhary*
                                                 JACK ZOUHARY
                                                 U. S. DISTRICT JUDGE

                                                 November 4, 2020